UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| STEVEN HODGES, on behalf of himself and all others similarly situated, | : : : : | **Civil Action No. 13-3381 (SRC)** |
|  | Plaintiff, | : : | **OPINION** |
| v. | : : |  |
| VITAMIN SHOPPE, INC., | : : |  |
|  | Defendant. | : |  |

**CHESLER**, District Judge

      This matter comes before the Court upon the motion filed by Defendant Vitamin Shoppe, Inc. ("Defendant" or "Vitamin Shoppe") to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff Steven Hodges ("Plaintiff" or "Hodges") has opposed the motion. The Court has considered the papers filed by the parties. For the reasons that follow, the motion to dismiss will be granted in part and denied in part. Hodges will be granted leave to file an Amended Complaint.

**I.    BACKGROUND**

      This putative class action involves allegedly false claims made by Vitamin Shoppe in the labeling and advertising of a dietary supplement product known as "True Athlete Training Formula" (hereinafter, the "Product"). According to the Complaint, Vitamin Shoppe, which manufactures and sells the Product, promotes the Product as a bodybuilding, fitness training and

1

endurance developing formula. The Complaint avers that, contrary to statements made by Vitamin Shoppe about the Product's efficacy, the Product cannot deliver the promised results because the Product's ingredients are ineffective and/or because the instructed dosage is insufficient to achieve the results. Hodges, who is a citizen of California residing in Los Angeles, alleges that on or about December 2, 2012, he purchased the Product from Vitamin Shoppe's website. He further alleges that he, and the putative nationwide class of Product purchasers, would not have purchased the Product or would have paid substantially less for it had it not been for Defendant's misrepresentations. Hodges filed this lawsuit in federal court on May 30, 2013, claiming violation of the New Jersey Consumer Fraud Act, breach of express and implied warranties and unjust enrichment. This Court has subject matter jurisdiction over the action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

## II. DISCUSSION

### A. Article III Standing

Defendant has argued that the action must be dismissed pursuant to Rule 12(b)(1) on the grounds that Hodges has no standing under Article III to bring this suit. Article III standing is a threshold question of jurisdiction. Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007). Accordingly, before turning to an examination of the sufficiency of the claims pled by Hodges, the Court must first address Defendant's argument regarding constitutional standing.

Article III empowers the Court to hear only "cases or controversies," which means that (1) a plaintiff has suffered an injury-in-fact, (2) the injury is fairly traceable to some action of the defendant and (3) the injury is capable of redress by the court. Lujan v. Defenders of Wildlife,

504 U.S. 555, 560 (1992). These three elements constitute "the irreducible constitutional minimum" of Article III standing. Id.; see also Steel Co. v. Citizens For A Better Environment, 523 U.S. 83, 103-04 (1998) ("This triad of injury in fact, causation, and redressability comprises the core of Article III's case or controversy requirement . . . .") The Supreme Court has held that the party invoking federal jurisdiction bears the burden of establishing Article III standing. Steel Co. v. Citizens For A Better Environment, 523 U.S. at 103-04.

Vitamin Shoppe's standing argument focuses on the injury-in-fact requirement. In Lujan, a seminal case on Article III standing, the Supreme Court defined injury in fact as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. The Lujan Court added that by "particularized," it meant that the harm claimed must personally affect the plaintiff, as opposed to some third party. Id. at 561 n. 1. Vitamin Shoppe maintains that Hodges cannot establish that he has sustained injury-in-fact based on his mere purchase of the product. It stresses that the Complaint does not allege either that Hodges himself ingested the subject dietary supplement or that he was, in his experience using the Product, disappointed by its underperformance and/or failure to provide the promised enhancement to his exercise routine.

Hodges, however, does not bring this lawsuit seeking relief for bodily harm allegedly caused by the Product. Were that the case, Defendant's argument concerning the absence of any allegations of Product use by Plaintiff himself might be on point. While standing does not depend on the merits of a plaintiff's claims, "it often turns on the nature and source of the claim asserted." Warth v. Seldin, 422 U.S. 490, 500 (1975). This is not a personal injury action. Rather, it concerns Plaintiff's claims that he was defrauded by Vitamin Shoppe's allegedly false

3

statements about the Product to consumers in the marketplace and as a result bought merchandise that was "useless." (Compl. ¶ 15.) He alleges that he purchased the Product on the Vitamin Shoppe website "for his own use, and not for resale" and that "prior to purchasing the Product, [he] read and relied on Defendant's misrepresentations." (Id. ¶ 8.) Plaintiff's alleged economic loss in connection with his own purchase is both particularized and actual: it claims harm to himself, not a third person, and regards a real, non-hypothetical transaction. The alleged loss suffices to constitute injury-in-fact. Danvers Motor Co., Inc. v. Ford Motor Co., 432 F.3d 286, 291 (3d Cir. 2005) (discussing requirements of Article III standing and noting that "[w]hile it is difficult to reduce injury-in-fact to a simple formula, economic injury is one of its paradigmatic forms."). The Court is satisfied that Hodges has established the he has Article III standing to bring this suit, and thus insofar as Defendant's motion seeks dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the motion will be denied.

### B. Sufficiency of the Claims

Vitamin Shoppe also seeks dismissal of the entire Complaint pursuant to Rule 12(b)(6). A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556.) Following Iqbal and Twombly, the Third Circuit has held that, to prevent dismissal of a claim, the complaint must show, through the facts alleged, that the plaintiff is entitled to relief. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

4

While the Court must accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff, it need not accept a "legal conclusion couched as a factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007); Fowler, 578 F.3d at 210-11; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." Iqbal, 556 U.S. at 678.

Moreover, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to Plaintiff's Consumer Fraud Act claim. F.D.I. C. v. Bathgate, 27 F.3d 850, 876 (3d Cir.1994). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." As interpreted and applied by the Third Circuit, Rule 9(b) requires "plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir.1999) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990)); see also Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir.2007) (holding that Rule 9(b) requires a party alleging fraud to state the circumstances of the alleged fraud "with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it] is charged.'"). To satisfy Rule 9(b)'s stringent pleading requirements, the plaintiff must "inject precision or some measure of substantiation into a fraud allegation." Frederico, 507 F.3d at 200.

Examining the Complaint's Consumer Fraud Act claim according pleading standards of Rule 8(a) and 9(b), the Court concludes that it fails to state a claim upon which relief can be granted. A claim under the Consumer Fraud Act entails three *prima facie* elements: "(1)

5

unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009). Conduct in violation of the Consumer Fraud Act is defined as "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J.S.A. 56:8–2. The principal deficiency in Plaintiff's claim lies in the Complaint's lack of factual allegations specifying how or why the statements made on the Product label and on Vitamin Shoppe's website were false or deceptive. The Complaint fails to state with plausibility, much less particularity, that the statements violate the Consumer Fraud Act.

With a few exceptions the Court will address below, the Complaint does not identify which statements about the Product are allegedly actionable. Rather, it block quotes the Product label and the pages on Defendant's website which promote the Product, attaching copies of each to the Complaint, and then asserts, at paragraph 14, that Defendant's claims about the Product and its "intentions" and "formulations" are false. The paragraph goes on to allege that "any claim that the Product is effective when used per Defendant's directions to build muscle mass, increase strength, build endurance, or to realize any of the other benefits promised as part of the Product is false." (Compl. ¶ 14.) Apart from attacking the statements about the Product in the broadest terms possible, the Complaint does not point to where on the label or the website these benefits, as recited by Plaintiff, are purportedly promised by Defendant. The Product label, for example, states as follows: "Serious muscle, endurance and performance support. That's what you get

with True Athlete Training Formula. No filler. No fluff. No hype. Just the primary active ingredients needed to give you the advanced pre-workout support you want." (Id. ¶ 12.) There is no indication that, as Hodges avers, Vitamin Shoppe promised that the Product will "build muscle mass, increase strength [and] build endurance." (Id. ¶ 14.) The words used in the label do not match the words identified by Plaintiff as a misrepresentation. At a minimum, a viable Consumer Fraud Act claim must be based on some alleged misconduct – here, the allegedly false promotion of the Product – that could be attributed to the defendant.

As to those statements actually taken from Vitamin Shoppe's website and isolated by the Complaint as alleged misrepresentations, the facts alleged by Hodges as to their falsity are, at best, conclusory. Here, the Court refers to the allegations, set forth at paragraphs 63-67 of the Complaint, concerning Vitamin Shoppe's indications that when combined with other supplements, the Product will enhance muscle support, recovery support, energy and endurance. The Complaint alleges that, as to each function, the "Product does nothing to aid in this process" and thus the statements are misleading in that they omit a material fact. (Compl. at ¶¶ 64-66.) The assertion that the Product is ineffective appears, however, to be based on Plaintiff's own conclusion as to the inability of the Product's four active ingredients – creatine monohydrate, L-Arginine Alpha Ketoglutarate (abbreviated in the Complaint as "AAKG"), beta alanine and AstraGin[1] – to deliver the promised benefits. Hodges alleges that AAKG is "known to be useless" for a variety of physiological functions. (Compl. ¶ 17.) He also alleges that while the other active ingredients in the Product "may, in proper doses and in the appropriate conditions, nominally offer some of the claimed benefits, Defendant knowingly under-doses" these ingredients. (Id. ¶ 18.) He avers that "Defendant drastically under-doses these compounds to

---

[1] The Product label identifies AstraGin as a proprietary blend of ginseng root and astragalus membranaceous root.

profit from the name recognition and efficacy claims associated with them, while dramatically increasing their profit margin by under-dosing the ingredients, making them all but useless." (Id. ¶ 15.)

Despite the superficial appeal of Plaintiff's claims that Vitamin Shoppe defrauded consumers by making misleading statements and omissions of material fact about the Product, a closer examination reveals that it lacks a factual basis. The Complaint recites various scientific studies concerning the efficacy of the active ingredients to perform various functions in the body. However, their findings, as described by the Complaint, are by and large inapposite to the crucial assertion that Vitamin Shoppe's representations about the Product's benefits are false. The basis of Plaintiff's claim of falsity appears to rest on the *absence* of scientific support for delivery of benefits at the dosages indicated by the Product. For example, the Complaint states that creatine monohydrate "has been clinically proven *only at certain doses* to increase strength and muscle mass," (Compl. ¶ 50, emphasis added), and then avers, without support, that at the dosing indicated by the Product, the creatine monohydrate could not achieve those benefits. Likewise, as to beta alanine, the Complaint alleges that "the effective dosage" is "2.4 to 3.2 grams per day," but that the Product's formulation, at only 500mg of beta alanine per serving, "is far less than the dosage established to offer any of the promised benefits." (Id. ¶¶ 56-57.)

The implication that affirmative proof as to the effectiveness of an ingredient at one dosage renders it ineffective at some other, lower dose, as contained in the Product's formulation does not state a *prima facie* Consumer Fraud Act claim. The reasons are two-fold. First, the conclusion on which Plaintiff bases his allegation that Defendant's representations about the Product are false requires a leap from the existing scientific research. As pled in the Complaint,

8

this leap is made through nothing but speculation. In other words, no factual allegations bridge the studies cited to the conclusion underpinning the alleged falsity. Second, despite Plaintiff's arguments to the contrary, Plaintiff's allegations of falsity are rooted in the lack of prior substantiation that benefits are possible at the Product's dosage of active ingredients. In Franulovic v. The Coca Cola Company, the Third Circuit observed that "[n]o New Jersey or Third Circuit decision has applied the prior substantiation theory to the New Jersey Consumer Fraud Act." Franulovic v. The Coca Cola Company, 390 F. App'x 125, 128 (3d Cir. 2010). The plaintiff in that action had sought to file an amended complaint which asserted that the defendant had violated the Consumer Fraud Act by advertising a product as a calorie burning drink without prior substantiation. Id. at 127. On appeal of the district court's order denying the plaintiff's motion to amend, the Third Circuit concluded that the "District Court correctly held that a New Jersey Consumer Fraud Act claim cannot be premised on a prior substantiation theory." Id. at 128. Although Franulovic is not a precedential decision, Hodges concedes that "prior-substantiation claims . . . are not permitted under the NJCFA." (Pl. Br. at 11.) Hodges also contends that a lack of prior substantiation concerning the AstraGin ingredient's benefits render Vitamin Shoppe's representations about the Product misleading. The Complaint alleges that while AstraGin's sole function in the Product is to increase the bioavailability of other active ingredients, "there are no scientifically reliable studies on AstraGin's effect on Creatine or Beta

9

Alanine absorption."[2] (Compl. ¶ 61.) The allegations as to the fourth active ingredient, AAKG, are not as precise, in that they aver both that specific studies have demonstrated that AAKG does not increase muscle blood flow after resistance training, and thus provides no muscle building benefits, and that AAKG use has resulted in "modest improvements in muscle strength and power." (Compl. ¶¶ 28, 45.) This lack of clarity as to pleading prevents the Court from evaluating whether the allegations concern ineffectiveness or non-substantiation and thus from concluding whether the allegations are probative of falsity.

In short, to plead a viable Consumer Fraud Act claim, Plaintiff must identify each statement and/or omission made by Defendant about the Product that he alleges violates the statute and plead with particularity the basis upon which he contends that such statement and/or omission is false or misleading. As to the latter, facts, and not mere conclusions or speculative assertions, must be alleged. For the reasons discussed above, the Consumer Fraud Act claim pled in the Complaint does not meet the Rule 8(a) standard articulated by Iqbal, much less Rule 9(b)'s requirement that the circumstances constituting fraud must be stated with particularity.[3] However, as the foregoing discussion also reflects, Plaintiff may cure the pleading deficiency by more clearly defining the offending misrepresentations and by adding factual allegations which

---

[2] In other words, Plaintiff has no data as to whether AstraGin increases the absorption and efficacy of creatine or beta alanine. Without such factual allegations as to the effectiveness of the combined ingredients, that is, the ability of the active ingredients to have a synergistic effect, Plaintiff would appear to base his misrepresentation claims as to the overall Product benefits on a prior substantiation theory. Indeed, the Court notes that the allegations pled in support of the Consumer Fraud Act claim isolate the individual components of the Product but do not address the Product as a whole. Apart from the lack of factual basis as to the purported ineffectiveness of each individual ingredient, the Complaint also lacks any factual allegations supporting the critical assertion that Defendant's claims about the Product are misleading because the Product as a whole cannot deliver the promised benefits. Without a factual predicate for the ineffectiveness of the Product formulation, that is, the alleged inability of the Product to provide the benefits as stated on the Product label and Vitamin Shoppe website, it is difficult to discern how the Complaint pleads the circumstances constituting fraud, as required by Rule 9(b).

[3] The Court notes that Defendant has also argued that the Consumer Fraud Act claim fails to state ascertainable loss, an essential element of the claim. The Court does not reach this argument, however, in light of the insufficiency of the Complaint's allegations with regard to unlawful conduct. It wishes to make clear that its conclusion that an injury-in-fact has been stated to meet the "irreducible constitutional minimum" of Article III standing is distinct from the question of whether Plaintiff has pled ascertainable loss within the meaning of the Consumer Fraud Act.

support his claim that those misrepresentations are false or misleading. The Court will dismiss the claim without prejudice and with leave to re-plead. See Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (holding that upon granting a defendant's motion to dismiss a deficient complaint, a district court should grant the plaintiff leave to amend within a set period of time, unless amendment of the complaint would be inequitable or futile).

The remainder of the claims in the Complaint will also be dismissed without prejudice. A *prima facie* claim for breach of express warranty requires Plaintiff to identify an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." N.J.S.A. 12A:2-313(a). The Complaint avers, in purely conclusory terms, that "Defendant made several different express warranties" and that Plaintiff's receipt of a product that did not provide muscle, endurance and/or performance support constitutes a breach of "all applicable express warranties." (Compl. ¶¶ 100, 103.) This threadbare use of terms such as "express warranties" and "breach" and a broad reference to allegations made earlier in the Complaint does not state a plausible claim for relief under Iqbal. The breach of implied warranty claim is also deficient, as it is grounded in the alleged ineffectiveness of the Product, an assertion for which there is a lack of factual content, as discussed above. Finally, the unjust enrichment claim is similarly premised on the theory that the Product could not deliver the promised benefits. Thus, it must be dismissed for failure to meet Rule 8(a)'s requirement that facts demonstrating that the plaintiff is entitled to relief must be alleged.

## III.  CONCLUSION

For the reasons discussed, the Court denies the motion insofar as it seeks dismissal for lack of standing but grants the motion to dismiss the Complaint pursuant to Rule 12(b)(6).  The claims will be dismissed without prejudice.  Leave to file an Amended Complaint to meet the applicable pleading standards, as discussed above, will be granted. An appropriate order will be filed.

  s/ Stanley R. Chesler  
  STANLEY R. CHESLER  
  United States District Judge

Dated:  January 15, 2014